UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | 1:14-cr-00188-LJO |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 |
| v. | |
| JOSE VALENZUELA, | |
| Defendant. | (ECF No. 64) |

## I. INTRODUCTION

Petitioner Jose Valenzuela, a prisoner in federal custody at FCI Oakdale II, in Oakdale, LA, brings this *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons discussed below, Petitioner's motion is **DENIED IN PART**.

## II. BACKGROUND

On November 23, 2015, Petitioner pleaded guilty to one count of a two-count indictment for conspiracy to distribute methamphetamine and/or possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii). ECF No. 41. In the plea agreement, Petitioner agreed to the following facts of the case:

> Beginning at a time unknown but no later than August 1, 2014, and, continuing to no later than August 19, 2015, in the County of Kern, State and Eastern District of California, the defendant and at least one other person entered into an agreement to distribute methamphetamine.

1

> Specifically, on or about August 19, 2014, the defendant agreed to sell approximately 26 pounds of methamphetamine to an undercover officer. The defendant retrieved ten (10) pounds of methamphetamine from the residence of the co-defendant, Jaime Lara and traveled to meet the undercover officer to deliver the methamphetamine. Although defendant fled from the agents when they attempted to detain him, he was apprehended and ten (10) pounds of methamphetamine was found in his car. The defendant called the co-defendant while he was running from agents and told the co-defendant, Jaime Lara, to get rid of the remaining sixteen (16) pounds of methamphetamine.
>
> At all relevant times, the defendant knew that he was in possession of methamphetamine or some other kind of prohibited drug.

ECF No. 37, Plea Agreement, ¶ 4(c). The plea agreement further provided that Petitioner waived the right to appeal the conviction or any sentence less than the maximum provided under 21 U.S.C. § 841(a)(1) and (b)(1)(C). *Id.* ¶ 2(f). He additionally "waive[d] his right to challenge his conviction, sentence or the manner in which it was determined in any post-conviction attack," including through a § 2255 motion, except for any non-waivable claims. *Id.* In exchange for these concessions, the government agreed to dismiss the second count of the indictment, for possession with intent to distribute methamphetamine, in violation of 21 U.S.C § 841(a)(1) and (b)(1)(A)(viii). *Id.* ¶ 3(c). The plea agreement stipulated that the weight of the methamphetamine attributable to Petitioner's conduct was approximately 26 pounds, that the base offense level under the United States Sentencing Guidelines ("USSG") was 38, that the acceptance of responsibility would reduce the offense level by three, and that the adjusted offense level would be 35, unless Petitioner met the criteria for a safety-valve reduction under USSG § 5C1.2 (a)(1)-(5). ECF No. 37 ¶ 3(a). The resulting guideline range at an offense level of 35 would be 168 to 210 months' imprisonment, and the government agreed to recommend a sentence at the low end of the range. *Id.*

During the colloquy at the change-of-plea hearing, the Court advised Petitioner that count one carried a mandatory minimum of ten years' imprisonment and that the maximum potential sentence for

that count was life imprisonment.[1] ECF No. 87 (11/23/15 Tr.) at 4:24-5:1. Petitioner stated that he understood that the Sentencing Guidelines were discretionary and that the sentence imposed may differ from the one he had discussed with counsel:

> Q. Okay. Now, with respect to your sentencing, the Court will determine a nonbinding and advisory guideline sentencing range. The Court will consider whether there is a basis for departing either above or below that range. The Court will then factor an advisory Sentencing Guideline to impose a sentence that is reasonable in light of the factors that are set forth by law. Do you understand that?
>
> A. Yes, sir.
>
> Q. Have you discussed with your attorney how the advisory Sentencing Guidelines and the federal sentencing laws might apply to your case?
>
> A. Yes, sir.
>
> Q. The Court will not be able to determine your sentence until after a Presentence Report has been completed and you and the government have had an opportunity to challenge the reported facts and the application of the advisory Sentencing Guidelines and the federal sentencing laws.
>
> The sentence imposed may be different from any estimate your attorney may have given you. Do you understand that?
>
> A. Yes, sir.

*Id.* at 5:18-6:14. In addition, Petitioner stated that he understood that he was waiving his right to file an appeal or otherwise to challenge the case, including through the filing of a habeas petition:

> Q. As part of your plea agreement, you are going to waive; that is, give up, your right to appeal your case, and you are going to give up your right to challenge your case in any post conviction proceedings, including by way of motion or writ, except for nonwaivable claims. Do you understand that?
>
> A. Yes, sir.
>
> Q. And do you now waive[,] that is, give up, those legal rights, for this case?
>
> A. Yes, sir.

---

[1] This was also noted in the plea agreement. ECF No. 37 ¶ 5(a).

*Id*. at 6:15-24. Petitioner agreed with the factual basis set forth in his plea agreement, agreed that he had "fully discussed that factual basis with [his] attorney," and agreed that it was "a true and accurate statement of the facts in [his] case." *Id*. at 9:14-10:3. The Court found that Petitioner's plea of guilty was "a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of the offense." *Id*. at 11:6-8.

The U.S. Probation Office filed a Presentence Investigation Report ("PSR") on December 12, 2015. The PSR calculated a base offense level of 38, based on the 26 pounds of methamphetamine involved in the offense, and applied a three-level reduction for acceptance of responsibility. ECF No. 46 ¶¶ 17-29. The PSR differed from the plea agreement's calculation of the base offense level in one respect. It recommended a two-level increase for reckless endangerment during flight pursuant to USSG §3C1.2, for Petitioner's operation of a vehicle "in a reckless manner while attempting to flee from law enforcement officers." *Id*. ¶ 24. The PSR calculated a total offense level of 37 with a criminal history category of I, for a total guideline imprisonment range of 210-262 months. *Id*. ¶ 51.

Petitioner's counsel objected in a sentencing memorandum to the PSR's two-level enhancement for reckless endangerment during flight, stating that it was not a fact that Petitioner admitted to in the plea agreement and was not discussed prior to signing the plea agreement. ECF No. 51 at 2.

At the sentencing hearing, held on April 25, 2017, the Court addressed the difference between the Guideline range recommended in the PSR and the range the parties anticipated in the plea agreement. ECF No. 76 (4/25/16 Tr.) at 2:16-3:3. Defense counsel stated that the enhancement for reckless endangerment during flight "was not contemplated at the time we entered the plea" and that "[t]he government didn't make any representations either way." *Id*. at 3:5-7. Counsel for the government stated that it was "obviously turned over in the discovery. The facts of the case are that he fled from the police" in a "high-speed chase" down the highway that lasted approximately ten minutes. *Id*. at 3:14-18. The government, however, maintained its recommendation of a low-end guideline sentence, as outlined in the plea agreement. *Id*. at 3:19-21. The Court found that the two-level

4

enhancement for reckless endangerment was appropriate and that the applicable offense level was 37, with a guideline range of 210 to 262 months. The Court imposed a sentence at the low end of the guideline range, of 210 months:

> With no criminal background, I would ordinarily give some type of a break here. The problem is that when I weigh and balance the -- your involvement, your level of involvement, and also the specific facts of this, having the high speed chase, which, of course, puts everybody at risk, anybody on the road, any innocent person, that is enormously dangerous.
>
> And it is not just the police that are chasing you. It is everybody who gets in the way of you and/or gets confused because of the red lights and sirens and all the things that happen. And it is not any dramatic statement that in these police chases, people get killed.
>
> And that, in my view, outweighs and certainly balances out your absence of criminal record. For somebody who is starting, if that's what's going on here, your criminal conduct, you certainly went down a very dangerous and serious path.

*Id.* at 7:2-18.

Petitioner filed a notice of appeal on August 8, 2016, contending that his counsel "promised" to file an appeal but failed to do so, requiring Petitioner to file the notice of appeal *pro se*. ECF No. 59. The Ninth Circuit dismissed the appeal as untimely. ECF No. 62.

On April 27, 2017, Petitioner filed the instant motion. ECF No. 64. In an order dated January 10, 2018, the Court granted the government's request for an extension of time to oppose the motion, setting January 30, 2018, as the deadline to oppose and granting Petitioner seven weeks from the date of the opposition to file a reply in support of his motion. ECF No. 85. The government filed its opposition on January 30, 2018. ECF No. 88. Petitioner did not file a reply.

The Court finds this matter suitable for decision on the papers pursuant to Local Rule 230(g).

### III. STANDARD OF DECISION

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in

5

custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

"Where a section 2255 motion is based on alleged occurrences outside the record, no hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal citations and quotations omitted). While a hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record," no hearing is required if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Id.* Ultimately, "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." *Id*. at 1159 (internal citations and quotations omitted).

## IV. ANALYSIS

Petitioner identifies three grounds he believes demonstrate that his attorney rendered ineffective assistance of counsel. He argues that his attorney provided constitutionally deficient representation by (1) failing to file the notice of appeal in a timely manner and failing to notify him that he could appeal *pro se*; (2) failing to contest the amount of drugs at issue; and (3) failing to argue that Petitioner qualified for a safety-valve reduction under the Sentencing Guidelines. The Government moved to dismiss based on the collateral attack waiver contained in Petitioner's plea agreement and argued in the alternative that Petitioner's claims are substantively meritless. The Court first considers whether Petitioner knowingly and voluntarily waived his ability to collaterally attack his sentence.

**A.**     **Collateral Attack Waiver**

A knowing and voluntary waiver of the right to collateral attack in a negotiated plea agreement is enforceable in federal court. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). "The sole test of a waiver's validity is whether it was made knowingly and voluntarily." *United States v. Anglin*, 215 F.3d 1064, 1068 (9th Cir. 2000). In determining whether a waiver was knowingly and voluntarily made, courts consider "the express language of the waiver and the facts and circumstances surrounding the signing and entry of the plea agreement, including compliance with [Fed. R. Crim. P. 11]." *United States v. Nguyen*, 235 F.3d 1179, 1182 (9th Cir. 2000). However, "in the context of § 2255 challenges brought by federal prisoners, . . . waivers cannot bar [ineffective assistance of counsel] claims associated with the negotiation of plea agreements." *Washington v. Lampert*, 422 F.3d 864, 870 (9th Cir. 2005). *See also United States v. Chan*, 721 F. App'x 728 (9th Cir. 2018) ("A waiver of a defendant's right to appeal or collaterally attack a conviction does not preclude a subsequent claim of ineffective assistance of counsel in which the defendant calls into question his entry into the agreement that contained the waiver." (citing *Washington*, 422 F.3d at 869-70)).

**B.     Ineffective Assistance Of Counsel**

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). To establish that the assistance of counsel was so ineffective as to constitute a constitutional violation under § 2255, a petitioner must demonstrate both a deficient performance by counsel and that the performance was prejudicial to the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005). To show deficient performance of counsel, the petitioner must demonstrate that his attorney "made errors that a reasonably competent attorney acting as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). To show prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Generally, an express waiver of the right to file a §2255 petition bars a defendant from moving

the sentencing court to vacate, set aside, or correct the sentence. *See United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). "A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Watson*, 582 F.2d 974, 986 (9th Cir. 2009).

Ineffective assistance of counsel may, however constitute a basis for a motion under § 2255. A waiver is unenforceable with respect to a challenge to the voluntariness on the waiver. This is because the ineffective assistance of counsel claim cannot be barred by an agreement that was produced by ineffective representation. *Washington v. Lampert*, 422 F.3d 864, (9th Cir. 2005) (holding that a waiver is unenforceable with regard to an ineffective assistance of counsel argument in a federal habeas petition brought under 28 U.S.C. § 2254). A waiver accepted in reliance on delinquent representation would deprive a petitioner of the opportunity to assert his Sixth Amendment right to effective assistance of counsel. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) (quoted with approval by *Washington*, 422 F.3d at 871).

1. **<u>Knowing And Voluntary Waiver</u>**

Petitioner argues that the plea agreement makes plain that the intent was to "deliver a guideline sentence of <u>33</u>. Although it was subject to further determination counsel used the wording in the plea to induce petitioner to believe a sentence within the . . . guideline range was a sure thing. . . . Had petitioner known he was accepting to plea of 210 months he would [n]ever have waived his constitutional right to a trial by jury." Mot. ¶ 13 (emphasis in original). He also complains that his counsel "implied" that if he accepted the plea deal, "he would face a sentence from 10 to 14 years" without apprising him of the fact that "he could face offense characteristics" that would raise the potential time in prison and result in a "sentence substantially different than the sentence" he envisioned when he pleaded guilty. *Id.* ¶ 20.

"A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing." *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006). To determine the voluntariness of a plea, the court must "look to the totality of the circumstances, examining both the defendant's

8

'subjective state of mind' and the 'constitutional acceptability of the external forces inducing the guilty plea.'" *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (quoting *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986)).

During the colloquy at the change-of-plea hearing, Petitioner acknowledged that the maximum potential sentence was life in prison, ECF No. 87 at 4:24-5:17; that he had read and discussed with his attorney the charges listed in the indictment, *id*. at 3:4-10; that he understood the elements involved in the crime to which he was pleading guilty, *id*. at 8:13-9:13; that he had read and discussed with his attorney the plea and its consequences, *id*. at 3:17-19; that he understood everything in the plea agreement, *id*. at 3:20-21; that he discussed with his attorney how the USSG and sentencing laws might apply to his case, *id*. at 6:2-5; that the sentence imposed may differ from any estimate he had discussed with his attorney, *id*. at 6:6-14; that he agreed with the factual basis set forth in his plea agreement, *id*. at 9:14-23; and that he was satisfied with his counsel's representation, 3:11-13. The court concluded that the plea was knowing and voluntary. *Id*. at 11:6-7.

"Findings made by the judge accepting the plea 'constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity'" *Doe*, 508 F.3d at 571 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, Petitioner's statements at his plea hearing "properly constitute an 'imposing' barrier to collateral attack." *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986).

Petitioner cannot overcome the "strong presumption of verity" the Court must accord to the statements he made during his plea hearing. Nothing in the plea colloquy indicates that. *See Doe*, 508 F.3d at 571 (finding that the defendant's response of "I guess" during a plea colloquy did not render the plea involuntary because the trial court asked further clarifying questions until the defendant provided a definitive answer to the question); *see also United States v. Gaither*, 245 F.3d 1064, 1069 (9th Cir. 2001) ("In assessing the voluntariness of the plea, statements made by a criminal defendant contemporaneously with his plea should be accorded great weight."); *Brown-Monroe*, 2012 WL

6140408 at *9-10 (review of plea transcript revealed that the petitioner was made aware of the maximum possible sentence he was facing and waiver of trial rights, which therefore "belie[d] any contention by petitioner that his no contest plea was not voluntary and intelligent").

A petitioner may "attack the voluntary and intelligent character of [a] guilty plea by showing that the advice he received from counsel was not within [the range of competence demanded of attorneys in criminal cases]." *Tollett*, 411 U.S. at 266-67 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). However, at this stage, he must also demonstrate "gross error on the part of counsel," and that the advice he received from counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer." *Turner*, 281 F.3d at 880 (internal citations omitted). Petitioner's argument that his counsel's erroneous advice renders his plea involuntary has been foreclosed by the Ninth Circuit. The defendant in *Womack v. Del Papa* argued that his attorney's erroneous prediction that he would receive a lighter sentence than he actually received rendered the plea not knowingly, voluntarily, or intelligently entered. 497 F.3d 998, 1003-04 (9th Cir. 2007). Womack's attorney told him that his guilty plea was his "best chance" of his receiving a sentence of thirty to forty years, but he was actually sentenced to eight terms of life without parole. *Id.* at 1003. Relying on the record, which demonstrated that Womack was informed of the potential sentence and had acknowledged that he could face a life sentence, the Ninth Circuit found that the Womack could not show that he was prejudiced by his attorney's prediction, and affirmed the lower court's findings that the plea was voluntarily and intelligently entered into. *Id.* Even assuming that Womack's attorney's performance was deficient, the Ninth Circuit held that he was not prejudiced "because the plea agreement . . . alerted [him] to the potential consequences of his guilty plea." *Id.* at 1003; *cf. Chizen*, 809 F.2d at 562-63 (finding the presumption of verity overcome where the defendant was told by his attorney that the trial judge had agreed not to sentence him to more than 90 days when he signed the plea agreement, and defendant was then sentenced to 180 days of imprisonment).

Assuming the truth of Petitioner's claims that his counsel implied that he would get a sentence of

10 to 14 years, rather than the 210 months that the Court imposed, this would not amount to a "gross error" that rendered Petitioner's guilty plea constitutionally invalid. *Turner*, 281 F.3d at 881. Through his plea-bargaining process, Petitioner was made aware that he could face up to life imprisonment. ECF No. 87 (11/23/15 Tr.) at 4:24-5:1; ECF No. 37 ¶ 5(a). The plea agreement that he signed agreed that the guidelines range for offense level 35 with a criminal history category of I was 168-210 months' imprisonment and that if the two-level reduction under the safety valve applied, the guidelines range for offense level 33 was 135 to 168 months' imprisonment. ECF No. 37 ¶ 2(c)(6). Because he did not debrief with the government after changing his plea but before sentencing, he did not qualify for the safety-valve reduction. ECF No. 46 ¶ 20. The 210-month sentence that was imposed was not only substantially less than the statutory maximum but was at the high end of one of the ranges outlined in his plea agreement.

As Petitioner was on notice that he could receive a substantially heavier sentence than the 120 to 168 months that his counsel allegedly told him that he could expect to receive if he pleaded guilty, Petitioner cannot demonstrate that he was sufficiently prejudiced under *Strickland* by this advice. *Womack*, 497 F.3d at 1003-04; *see also Sexton v. Cozner*, 679 F.3d 1150, 1156 (9th Cir. 2012) (attorney's prediction that defendant might be eligible for parole after twenty-five years if he pleaded guilty was not prejudicial where defendant stated that he understood that he could face a mandatory sentence of life imprisonment and acknowledged that the sentencing judge was not bound by sentencing recommendations). The Court accordingly finds that Petitioner's plea was voluntarily and intelligently entered. The plea agreement alerted him to the maximum sentence, which was far higher than his actual sentence. *See id.*; *Hill*, 474 U.S. at 59. Therefore, even assuming the truth of Petitioner's assertions concerning the advice defense counsel gave him, Petitioner has not shown that the plea agreement— including the provision governing his right to collaterally attack it—was not entered into knowingly and voluntarily.

**C.      Merits Of Petitioner's Motion**

11

Even if Petitioner had not validly waived his right to collateral attack, Petitioner has not demonstrated that he received ineffective assistance of counsel. The Court considers his arguments in turn.

### 1. **Failure To Contest Amount Of Drugs**

Petitioner argues that his counsel provided ineffective assistance "for failure to contest the amount of drugs" in the PSR. Mot. at 4. He argues that he "was found with 10 pounds of methamphetamine in the car" at the time of his arrest but that the PSR held him responsible for 26 pounds. *Id*. He argues that the plea agreement "had a clear intent to deliver a guideline sentence of 33," with the apparent assumption that the guideline offense level in the PSR was based on a finding that 10 pounds of methamphetamine were involved in the offense. *Id*. at 5.

"[A] guilty plea comprehends all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Morrison*, 113 F.3d 1020, 1021 (9th Cir. 1997) (internal quotation marks, alteration, and citation omitted). The PSR states that there were 26 pounds of methamphetamine involved in Petitioner's offense because in the plea agreement—which Petitioner knowingly and voluntarily entered into—Petitioner admitted that he "agreed to sell approximately 26 pounds of methamphetamine to an undercover officer." ECF No. 37 ¶ 4(c). He further admitted that there were ten pounds of methamphetamine in his car when he was arrested and that while he was fleeing from agents, Petitioner called his co-defendant and told him "to get rid of the remaining sixteen (16) pounds of methamphetamine." *Id*. Petitioner admitted that he had read the factual basis of the offense set forth in the plea agreement, had "fully discussed that factual basis" with his attorney, and that it was a true and accurate statement of the facts. ECF No. 87 (11/23/15 Tr.) at 9:14-23. The Court found that the plea was knowing and voluntary. *Id*. at 11:6-8.

The PSR calculated the base offense level with the factual admission from the plea agreement that 26 pounds were involved in the offense to which Petitioner pleaded guilty. That base offense level, 38, is based on the facts that Petitioner agreed were true and is the same base offense level that

Petitioner agreed in the plea agreement was the proper base offense level. *See* ECF No. 37 ¶ 2(c)(1).[2]

Petitioner's counsel was not ineffective for failing to object to the drug quantity in the PSR.

### 2. **Failure To Argue For Safety-Valve Reduction**

Petitioner argues that he suffered ineffective assistance of counsel due to his attorney's failure to argue for a two-point reduction in his offense level based on the safety-valve relief under USSG § 5C1.2. That provision provides that the mandatory minimum shall not apply in cases involving an offense under, *inter alia*, 21 U.S.C. §§ 841 and 846 where the defendant meets the following criteria from 18 U.S.C. § 3553(f)(1)–(5):

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

USSG § 5C1.2. As the PSR noted, Petitioner does appear to meet the criteria laid out in the first four prongs. ECF No. 46 ¶ 20. He did not, however, debrief with the government and therefore did not meet

---

[2] The total offense level of 33 that Petitioner had hoped would govern his sentence was contingent on the two-level reduction that would result if he qualified for the safety-valve reduction. As explained below, he did not debrief with the government and therefore did not qualify for the reduction. He did get a three-level reduction for acceptance of responsibility for entering a guilty plea. However, the two-level increase in the PSR for reckless endangerment while attempting to flee from law enforcement officers was also rooted in another fact he admitted in the plea agreement. *See* ECF No. 37 ¶ 2(c)(1) ("Although *defendant fled from the agents when they attempted to detain him*, he was apprehended and ten (10) pounds of methamphetamine was found in his car." (emphasis supplied)).

the fifth requirement. *Id*. *See also* ECF No. 76 (4/25/16 Tr.) at 4:13-15 (Petitioner's counsel's statement that "I find it to be unfortunate that there isn't a way for me to move forward with the safety valve provision, for instance, or any other issue.").

Accordingly, Petitioner did not qualify for the safety-valve reduction, and his counsel was not ineffective for failing to argue that he was.

### 3. <u>Failure To File Notice of Appeal</u>

Petitioner states that he communicated to his counsel "during the sentencing hearing he wished to proceed with an appeal to the Ninth Circuit. Counsel promised he will do accordingly." ECF No. 64 at 3. Whether a defendant who knowingly and voluntarily waived both the right to appeal and the right to collaterally attack the conviction and sentence can succeed in claiming in a habeas petition that his counsel was ineffective for failing timely to file a notice of appeal is the subject of in intra-circuit split. *See, e.g., United States v. Flanders*, No. 2:12-cr-363 TLN EFB P, 2018 WL 3135466, at *2 (E.D. Cal. June 27, 2018) (This "question is an open one in the Ninth Circuit."); *United States v. Taggart*, No. 2:11-CR-0140 MCE KJN, 2014 WL 3867431, at *4 (E.D. Cal. Aug. 6, 2014) (collecting cases), *report and recommendation adopted*, No. 2:11-cr-0140 MCE KJN P, 2017 WL 65260 (E.D. Cal. Jan. 6, 2017).

The Supreme Court reaffirmed in *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." The Ninth Circuit applied this principle to the context of a habeas petition filed by a criminal defendant whose attorney ignored the defendant's request to enter an appeal following a guilty plea that included a valid waiver of the right to appeal in *United States v. Sandoval–Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005). The panel held that an attorney's failure to follow his client's request to file a notice of appeal, even in the face of a valid waiver in the plea agreement to the right to appeal and with the likelihood that an appeal would result in greater punishment for the defendant than if he were to abide by the terms of the plea agreement and forego an appeal, satisfies both the deficient-performance and prejudice prongs of *Strickland* and is therefore *per se* ineffective

14

assistance of counsel, regardless of the merit of the appeal. Counterintuitive though this may be, it results because the defendant has suffered deficient performance from the attorney's failure to carry out his instructions to appeal, and resulting prejudice from his lost *opportunity* to file the appeal, "not that he lost a favorable result that he would have obtained by appeal." *Id*. A petitioner succeeding in demonstrating ineffective assistance of counsel on this claim enjoys limited relief: the sole remedy is to "allow[] the appeal to proceed."[3] *Sandoval-Lopez*, 409 F.3d at 1198.

The plea agreement in *Sandoval-Lopez* included a waiver of direct appellate rights but did not discuss a waiver of the right to collateral attack,[4] and the issue was presented to the Ninth Circuit on a habeas petition. Whether the same result occurs when a valid plea agreement includes a waiver of both the right to file a direct appeal and to file a collateral attack is a question that the Ninth Circuit has not yet had cause to answer. This Court has twice examined the issue and held that a defendant may waive such a claim but that "the scope of the waiver is limited to the express terms of the plea agreement." *United States v. Crisp*, No. 1:11-CR-00026-LJO, 2016 WL 235202, at *3 (E.D. Cal. Jan. 20, 2016). In *Crisp* the Court held that the waiver, which covered "issues regarding [defendant's] conviction, restitution imposed, forfeiture order and sentence" did not reach the defendant's request to file an appeal.[5] *Id*. The Court similarly held in *Schneider v. United States*, No. 1:10-CR-00361-LJO, 2012 WL 5522703, at *4 (E.D. Cal. Nov. 14, 2012), that a claim for ineffective assistance of counsel rooted in a

---

[3] This is done by the district court's vacating and reentering the judgment, to allow the defendant to file a timely notice of appeal. The court in *Sandoval-Lopez* closed by noting that "[i]t may be very foolish to risk losing [the benefit of a] plea bargain on an appeal almost sure to go nowhere . . . . Nevertheless the client has the constitutional right . . . to bet on the possibility of winning the appeal and then winning an acquittal, just as a poker player has the right to hold the ten and queen of hearts, discard three aces, and pray that when he draws three cards, he gets a royal flush." *Id*. at 1199.

[4] Though not quoted in the Ninth Circuit opinion, the relevant language of the plea agreement provided that "[t]he Defendant agrees not to appeal his convictions and any sentences imposed in accordance with this plea agreement." *United States v. Sandoval-Lopez*, No. 00-cr-2083-RHW (E.D. Wash. Jan. 11, 2001), ECF No. 94, Plea Agreement, ¶ 8.

[5] The provision provided that "[t]he defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, conviction and sentence. This waiver of appeal includes, but is not limited to, an express waiver of the defendant's right to appeal his plea, conviction, restitution imposed, forfeiture order and sentence on any ground . . . , and the defendant further agrees not to contest his plea, conviction, restitution imposed, forfeiture order and sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255." *United States v. Crisp*, No. 1:11-CR-00026-LJO, ECF No. 278 ¶ 4(e).

15

failure to file a notice of appeal fell beyond the scope of a waiver providing that "[t]he defendant . . . agrees not to contest her plea, conviction, restitution imposed or sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255 or § 2241." The Court concluded that "Ms. Schneider's claim that she received ineffective assistance of counsel when counsel ignored her request to file an appeal exceeds the scope of the waiver because it does not constitute a challenge to the plea, conviction, restitution imposed, or sentence. Rather, the claim challenges Ms. Schneider's inability to file an appeal" and was not barred by the waiver in the plea agreement. *Id.* In a third case, the Court addressed a similar claim in a case where the plea agreement involved both an appellate waiver and a collateral-attack waiver but did not address whether the collateral-attack waiver barred the ineffective assistance of counsel claim, apparently because the government focused on the untruthfulness of the claim that the defendant had asked his attorney to appeal rather than arguing that the waiver provision should be enforced. *Cruz-Hernandez v. United States*, No. 1:14-CR-201-LJO-BAM-1, 2016 WL 5109607, at *7 (E.D. Cal. Sept. 19, 2016). The Court ordered an evidentiary hearing, though the defendant withdrew his 2255 petition before the hearing could take place. No. 1:14-CR-201-LJO-BAM-1, ECF No. 52.

The waiver here provided that Petitioner "waive[d] his right to challenge his conviction, sentence or the manner in which it was determined" in any post-conviction attack. ECF No. 37, Plea Agreement, ¶ 4(c). Though the wording differs from the waivers in *Crisp* and *Schneider*, the Court finds that the substance is the same and that Petitioner's claim for his lost opportunity to file a notice of appeal falls outside the scope of the waiver. Accordingly, Petitioner's claim that his attorney failed to file a notice of appeal may proceed.

Under these circumstances, the government has two options. If it continues to oppose Petitioner's claim, the Court will need to make a factual determination whether Petitioner did ask his counsel to file a notice of appeal and his counsel refused to do so. *Sandoval-Lopez*, 409 F.3d at 1198. If the Court determines that Petitioner's allegations are true, the Court will vacate and reenter the judgment

16

to allow Petitioner to file a timely notice of appeal. *Id*. If the Court determines that Petitioner's allegations are not true, then Petitioner is entitled to no further relief. *Id*. In the alternative, the government can elect not to oppose the motion on this issue and to allow the appeal to proceed without an evidentiary determination. *Id*. If the government elects this path, the Court will vacate and reenter the judgment, assuming without deciding that the claim is true. *Id*.

The government is ORDERED to inform the Court how it would like to proceed within twenty (20) days of the filing date of this order. If the government elects to oppose the motion, the government will be ordered to obtain a declaration from Petitioner's trial counsel on (1) whether Petitioner told his counsel to file an appeal and (2) whether counsel then refused to file a notice of appeal on Petitioner's behalf. The Court will set the dates for any further filings only after hearing from the government on how it chooses to proceed.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

An appeal may not be taken from the denial of a § 2255 motion unless a certificate of appealability is issued. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To obtain a certificate of appealability, Petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (internal quotation marks and citations omitted).

Because Petitioner has failed to make a showing that he was denied a constitutional right, the Court **DECLINES** to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## VI. <u>CONCLUSION AND ORDER</u>

For the reasons discussed above, **IT IS HEREBY ORDERED** that:

1. Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 64) is **DENIED** as to his claims that his counsel rendered ineffective assistance of counsel for failure to contest the amount of drugs at issue and for failing to argue that he was eligible for the safety-valve reduction. The Court declines to issue Petitioner a certificate of appealability for these claims.
2. The government is **ORDERED** to inform the Court how it would like to proceed with respect to Petitioner's claim of ineffective assistance of counsel for ignoring his request to file a notice of appeal, pursuant to *United States v. Sandoval–Lopez*, 409 F.3d 1193 (9th Cir. 2005). The government **SHALL** file its position within twenty (20) calendar days of the filing date of this order.

IT IS SO ORDERED.

Dated: __**August 9, 2018**__      _____/s/ Lawrence J. O'Neill_____
UNITED STATES CHIEF DISTRICT JUDGE