# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSE VALENZUELA,<br><br>    Defendant. | 1:14-cr-00188-LJO<br><br>**MEMORANDUM DECISION AND ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>(ECF No. 64) |

## I. INTRODUCTION

Petitioner Jose Valenzuela, a prisoner in federal custody at FCI Oakdale II, in Oakdale, LA, brings this *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In an order dated August 10, 2018, the Court denied Petitioner's motion in part. ECF No. 90. For the reasons discussed below, the remaining portion of Petitioner's motion is likewise **DENIED**.

## II. BACKGROUND

On November 23, 2015, Petitioner pleaded guilty to one count of a two-count indictment for conspiracy to distribute methamphetamine and/or possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii). ECF No. 41. In the plea agreement, Petitioner agreed to the following facts of the case:

> Beginning at a time unknown but no later than August 1, 2014, and, continuing to no later than August 19, 2015, in the County of Kern, State and Eastern District of California, the defendant and at least one other person entered into an agreement to distribute methamphetamine.

> Specifically, on or about August 19, 2014, the defendant agreed to sell approximately 26 pounds of methamphetamine to an undercover officer. The defendant retrieved ten (10) pounds of methamphetamine from the residence of the co-defendant, Jaime Lara and traveled to meet the undercover officer to deliver the methamphetamine. Although defendant fled from the agents when they attempted to detain him, he was apprehended and ten (10) pounds of methamphetamine was found in his car. The defendant called the co-defendant while he was running from agents and told the co-defendant, Jaime Lara, to get rid of the remaining sixteen (16) pounds of methamphetamine.
>
> At all relevant times, the defendant knew that he was in possession of methamphetamine or some other kind of prohibited drug.

ECF No. 37, Plea Agreement, ¶ 4(c). The plea agreement further provided that Petitioner waived the right to appeal the conviction or any sentence less than the maximum provided under 21 U.S.C. § 841(a)(1) and (b)(1)(C). *Id*. ¶ 2(f). He additionally "waive[d] his right to challenge his conviction, sentence or the manner in which it was determined in any post-conviction attack," including through a § 2255 motion, except for any non-waivable claims. *Id*. In exchange for these concessions, the government agreed to dismiss the second count of the indictment, for possession with intent to distribute methamphetamine, in violation of 21 U.S.C § 841(a)(1) and (b)(1)(A)(viii). *Id.* ¶ 3(c). The plea agreement stipulated that the weight of the methamphetamine attributable to Petitioner's conduct was approximately 26 pounds, that the base offense level under the United States Sentencing Guidelines ("USSG") was 38, that the acceptance of responsibility would reduce the offense level by three, and that the adjusted offense level would be 35, unless Petitioner met the criteria for a safety-valve reduction under USSG § 5C1.2 (a)(1)-(5). ECF No. 37 ¶ 3(a). The resulting guideline range at an offense level of 35 would be 168 to 210 months' imprisonment, and the government agreed to recommend a sentence at the low end of the range. *Id*.

During the colloquy at the change-of-plea hearing, the Court advised Petitioner that count one carried a mandatory minimum of ten years' imprisonment and that the maximum potential sentence for

that count was life imprisonment.[1] ECF No. 87 (11/23/15 Tr.) at 4:24-5:1. Petitioner stated that he understood that the Sentencing Guidelines were discretionary and that the sentence imposed may differ from the one he had discussed with counsel:

> Q. Okay. Now, with respect to your sentencing, the Court will determine a nonbinding and advisory guideline sentencing range. The Court will consider whether there is a basis for departing either above or below that range. The Court will then factor an advisory Sentencing Guideline to impose a sentence that is reasonable in light of the factors that are set forth by law. Do you understand that?
>
> A. Yes, sir.
>
> Q. Have you discussed with your attorney how the advisory Sentencing Guidelines and the federal sentencing laws might apply to your case?
>
> A. Yes, sir.
>
> Q. The Court will not be able to determine your sentence until after a Presentence Report has been completed and you and the government have had an opportunity to challenge the reported facts and the application of the advisory Sentencing Guidelines and the federal sentencing laws.
>
> The sentence imposed may be different from any estimate your attorney may have given you. Do you understand that?
>
> A. Yes, sir.

*Id.* at 5:18-6:14. In addition, Petitioner stated that he understood that he was waiving his right to file an appeal or otherwise to challenge the case, including through the filing of a habeas petition:

> Q. As part of your plea agreement, you are going to waive; that is, give up, your right to appeal your case, and you are going to give up your right to challenge your case in any post conviction proceedings, including by way of motion or writ, except for nonwaivable claims. Do you understand that?
>
> A. Yes, sir.
>
> Q. And do you now waive[,] that is, give up, those legal rights, for this case?
>
> A. Yes, sir.

---

[1] This was also noted in the plea agreement. ECF No. 37 ¶ 5(a).

*Id.* at 6:15-24. Petitioner agreed with the factual basis set forth in his plea agreement, agreed that he had "fully discussed that factual basis with [his] attorney," and agreed that it was "a true and accurate statement of the facts in [his] case." *Id.* at 9:14-10:3. The Court found that Petitioner's plea of guilty was "a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of the offense." *Id.* at 11:6-8.

The U.S. Probation Office filed a Presentence Investigation Report ("PSR") on December 12, 2015. The PSR calculated a base offense level of 38, based on the 26 pounds of methamphetamine involved in the offense, and applied a three-level reduction for acceptance of responsibility. ECF No. 46 ¶¶ 17-29. The PSR differed from the plea agreement's calculation of the base offense level in one respect. It recommended a two-level increase for reckless endangerment during flight pursuant to USSG § 3C1.2, for Petitioner's operation of a vehicle "in a reckless manner while attempting to flee from law enforcement officers." *Id.* ¶ 24. The PSR calculated a total offense level of 37 with a criminal history category of I, for a total guideline imprisonment range of 210-262 months.[2] *Id.* ¶ 51.

Petitioner's counsel objected in a sentencing memorandum to the PSR's two-level enhancement for reckless endangerment during flight, stating that it was not a fact that Petitioner admitted to in the plea agreement and was not discussed prior to signing the plea agreement. ECF No. 51 at 2.

At the sentencing hearing, held on April 25, 2016, the Court addressed the difference between the Guideline range recommended in the PSR and the range the parties anticipated in the plea agreement. ECF No. 76 (4/25/16 Tr.) at 2:16-3:3. Defense counsel stated that the enhancement for reckless endangerment during flight "was not contemplated at the time we entered the plea" and that "[t]he government didn't make any representations either way." *Id.* at 3:5-7. Counsel for the government stated that it was "obviously turned over in the discovery. The facts of the case are that he

---

[2] Without the two-level enhancement, at a total offense level of 35 and a criminal history category of I, the imprisonment range would have been 168-210 months.

4

fled from the police" in a "high-speed chase" down the highway that lasted approximately ten minutes. *Id*. at 3:14-18. The government, however, maintained its recommendation of a low-end guideline sentence, as outlined in the plea agreement. *Id*. at 3:19-21. The Court found that the two-level enhancement for reckless endangerment was appropriate and that the applicable offense level was 37, with a guideline range of 210 to 262 months. The Court imposed a sentence at the low end of the guideline range, of 210 months:

> With no criminal background, I would ordinarily give some type of a break here. The problem is that when I weigh and balance the -- your involvement, your level of involvement, and also the specific facts of this, having the high speed chase, which, of course, puts everybody at risk, anybody on the road, any innocent person, that is enormously dangerous.
>
> And it is not just the police that are chasing you. It is everybody who gets in the way of you and/or gets confused because of the red lights and sirens and all the things that happen. And it is not any dramatic statement that in these police chases, people get killed.
>
> And that, in my view, outweighs and certainly balances out your absence of criminal record. For somebody who is starting, if that's what's going on here, your criminal conduct, you certainly went down a very dangerous and serious path.

*Id*. at 7:2-18.

Petitioner filed a notice of appeal on August 8, 2016, contending that his counsel "promised" to file an appeal but failed to do so, requiring Petitioner to file the notice of appeal *pro se*. ECF No. 59. The Ninth Circuit dismissed the appeal as untimely. ECF No. 62.

On April 27, 2017, Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 64. That motion argues that his attorney provided constitutionally deficient representation by (1) failing to file the notice of appeal in a timely manner and failing to notify him that he could appeal *pro se*; (2) failing to contest the amount of drugs at issue; and (3) failing to argue that Petitioner qualified for a safety-valve reduction under the Sentencing Guidelines.

In an order dated January 10, 2018, the Court granted the government's request for an extension of time to oppose the motion, setting January 30, 2018, as the deadline to oppose and granting Petitioner seven weeks from the date of the opposition to file a reply in support of his motion. ECF No. 85. The

government filed its opposition on January 30, 2018. ECF No. 88. Petitioner did not file a reply.

In an order dated August 10, 2018, the Court denied Petitioner's motion in part, disposing of all of Petitioner's claims except for his claim that his attorney provided ineffective assistance of counsel for failure to file a notice of appeal, as he requested. ECF No. 90. The order granted the government 20 days to inform the Court how it wished to proceed. If the government continued to oppose Petitioner's claim, the Court would make a factual determination whether Petitioner did ask his counsel to file a notice of appeal. *Id*. at 16-17. If the government elected not to oppose Petitioner's motion, the Court would permit the appeal to proceed without an evidentiary determination. *Id*. On November 1, 2018, the government filed its untimely response to the Court's order, notifying the Court of its continued opposition to Petitioner's § 2255 motion. ECF No. 95. The government response also attached a declaration from Petitioner's trial counsel, Mr. Richard A. Beshwate, Jr. ECF No. 95, Ex A., Declaration of Richard Beshwate ("Beshwate Decl."). In the sworn declaration, Mr. Beshwate states that "Mr. Valenzuela did NOT ask me to file a Notice of Appeal." Beshwate Decl. ¶ 4. The declaration further states that as part of the plea agreement, Petitioner "was advised that he was waiving his appellate rights" and "acknowledged and agreed to the waiver of his appellate rights as part of the agreement, through verbal means, through his signature on the plea agreement, and at the change of plea hearing." *Id*. ¶¶ 2-3. The declaration goes on to note that while Petitioner did not request that Mr. Beshwate file a notice of appeal, one of Petitioner's relatives called Mr. Beshwate's office "several months after the sentencing hearing" and that Mr. Beshwate "advised that the appellate rights were waived, and the time to file had now passed." *Id*. ¶ 4.

On October 4, 2018, after the date of the Court's order denying in part Petitioner's § 2255 motion but before the Government filed its response to that order, Petitioner filed a notice of appeal. ECF No. 93. The Ninth Circuit dismissed the notice of appeal on December 20, 2018, because the order challenged was not final. ECF No. 96.

The sole remaining issue from Petitioner's § 2255 motion is whether he requested that his trial

counsel file a notice of appeal at his sentencing hearing. *See* ECF No. 90.

### III. **STANDARD OF DECISION**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

"Where a section 2255 motion is based on alleged occurrences outside the record, no hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal citations and quotations omitted). While a hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record," no hearing is required if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Id.* Ultimately, "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." *Id.* at 1159 (internal citations and quotations omitted).

### IV. **ANALYSIS**

A. **Ineffective Assistance Of Counsel**

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). To establish that the assistance of counsel was so

7

ineffective as to constitute a constitutional violation under § 2255, a petitioner must demonstrate both a deficient performance by counsel and that the performance was prejudicial to the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005). To show deficient performance of counsel, the petitioner must demonstrate that his attorney "made errors that a reasonably competent attorney acting as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). To show prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Generally, an express waiver of the right to file a §2255 petition bars a defendant from moving the sentencing court to vacate, set aside, or correct the sentence. *See United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). "A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Watson*, 582 F.2d 974, 986 (9th Cir. 2009).

Ineffective assistance of counsel may, however, constitute a basis for a motion under § 2255. A waiver is unenforceable with respect to a challenge to the voluntariness on the waiver. This is because the ineffective assistance of counsel claim cannot be barred by an agreement that was produced by ineffective representation. *Washington v. Lampert*, 422 F.3d 864, (9th Cir. 2005) (holding that a waiver is unenforceable with regard to an ineffective assistance of counsel argument in a federal habeas petition brought under 28 U.S.C. § 2254). A waiver accepted in reliance on delinquent representation would deprive a petitioner of the opportunity to assert his Sixth Amendment right to effective assistance of counsel. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) (quoted with approval by *Washington*, 422 F.3d at 871).

**1.      Failure To File Notice of Appeal**

Petitioner states that he communicated to his counsel "during the sentencing hearing he wished to proceed with an appeal to the Ninth Circuit. Counsel promised he will do accordingly." ECF No. 64

at 3. Whether a defendant who knowingly and voluntarily waived both the right to appeal and the right to collaterally attack the conviction and sentence can succeed in claiming in a habeas petition that his counsel was ineffective for failing timely to file a notice of appeal is the subject of in intra-circuit split. *See, e.g., United States v. Flanders*, No. 2:12-cr-363 TLN EFB P, 2018 WL 3135466, at *2 (E.D. Cal. June 27, 2018) (This "question is an open one in the Ninth Circuit."); *United States v. Taggart*, No. 2:11-CR-0140 MCE KJN, 2014 WL 3867431, at *4 (E.D. Cal. Aug. 6, 2014) (collecting cases), *report and recommendation adopted*, No. 2:11-cr-0140 MCE KJN P, 2017 WL 65260 (E.D. Cal. Jan. 6, 2017).

The Supreme Court reaffirmed in *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." The Ninth Circuit applied this principle to the context of a habeas petition filed by a criminal defendant whose attorney ignored the defendant's request to enter an appeal following a guilty plea that included a valid waiver of the right to appeal in *United States v. Sandoval–Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005). The panel held that an attorney's failure to follow his client's request to file a notice of appeal, even in the face of a valid waiver in the plea agreement and with the likelihood that an appeal would result in greater punishment for the defendant than if he were to abide by the terms of the plea agreement and forego an appeal, satisfies both prongs of *Strickland* and is therefore *per se* ineffective assistance of counsel, regardless of the merit of the appeal. Counterintuitive though this may be, it results because the defendant has suffered deficient performance from the attorney's failure to carry out his instructions to appeal, and resulting prejudice from his lost *opportunity* to file the appeal, "not that he lost a favorable result that he would have obtained by appeal." *Id*. A petitioner succeeding in demonstrating ineffective assistance of counsel on this claim enjoys limited relief: the sole remedy is to "allow[] the appeal to proceed."[3] *Sandoval-Lopez*, 409 F.3d at 1198.

---

[3] This is done by the district court's vacating and reentering the judgment, to allow the defendant to file a timely notice of appeal. The court in *Sandoval-Lopez* closed by noting that "[i]t may be very foolish to risk losing [the benefit of a] plea bargain on an appeal almost sure to go nowhere . . . . Nevertheless the client has the constitutional right . . . to bet on the possibility of winning the appeal and then winning an acquittal, just as a poker player has the right to hold the ten and queen

The plea agreement in *Sandoval-Lopez* included a waiver of direct appellate rights but did not discuss a waiver of the right to collateral attack,[4] and the issue was presented to the Ninth Circuit on a habeas petition. Whether the same result occurs when a valid plea agreement includes a waiver of both the right to file a direct appeal and to file a collateral attack is a question that the Ninth Circuit has not yet had cause to answer. This Court has twice examined the issue and held that a defendant may waive such a claim but that "the scope of the waiver is limited to the express terms of the plea agreement." *United States v. Crisp*, No. 1:11-CR-00026-LJO, 2016 WL 235202, at *3 (E.D. Cal. Jan. 20, 2016). In *Crisp* the Court held that the waiver, which covered "issues regarding [defendant's] conviction, restitution imposed, forfeiture order and sentence" did not reach the defendant's request to file an appeal.[5] *Id*. The Court similarly held in *Schneider v. United States*, No. 1:10-CR-00361-LJO, 2012 WL 5522703, at *4 (E.D. Cal. Nov. 14, 2012), that a claim for ineffective assistance of counsel rooted in a failure to file a notice of appeal fell beyond the scope of a waiver providing that "[t]he defendant . . . agrees not to contest her plea, conviction, restitution imposed or sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255 or § 2241." The Court concluded that "Ms. Schneider's claim that she received ineffective assistance of counsel when counsel ignored her request to file an appeal exceeds the scope of the waiver because it does not constitute a challenge to the plea, conviction, restitution imposed, or sentence. Rather, the claim challenges Ms. Schneider's inability to file an appeal" and was not barred by the waiver in the plea agreement. *Id*. In a third case, the Court addressed a similar claim in a case where the plea agreement involved both an

---

of hearts, discard three aces, and pray that when he draws three cards, he gets a royal flush." *Id*. at 1199.

[4] Though not quoted in the Ninth Circuit opinion, the relevant language of the plea agreement provided that "[t]he Defendant agrees not to appeal his convictions and any sentences imposed in accordance with this plea agreement." *United States v. Sandoval-Lopez*, No. 00-cr-2083-RHW (E.D. Wash. Jan. 11, 2001), ECF No. 94, Plea Agreement, ¶ 8.

[5] The provision provided that "[t]he defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, conviction and sentence. This waiver of appeal includes, but is not limited to, an express waiver of the defendant's right to appeal his plea, conviction, restitution imposed, forfeiture order and sentence on any ground . . . , and the defendant further agrees not to contest his plea, conviction, restitution imposed, forfeiture order and sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255." *United States v. Crisp*, No. 1:11-CR-00026-LJO, ECF No. 278 ¶ 4(e).

10

appellate waiver and a collateral-attack waiver but did not address whether the collateral-attack waiver barred the ineffective assistance of counsel claim, apparently because the government focused on the untruthfulness of the claim that the defendant had asked his attorney to appeal rather than arguing that the waiver provision should be enforced. *Cruz-Hernandez v. United States*, No. 1:14-CR-201-LJO-BAM-1, 2016 WL 5109607, at *7 (E.D. Cal. Sept. 19, 2016). The Court ordered an evidentiary hearing, though the defendant withdrew his § 2255 petition before the hearing could take place. No. 1:14-CR-201-LJO-BAM-1, ECF No. 52.

The waiver here provided that Petitioner "waive[d] his right to challenge his conviction, sentence or the manner in which it was determined" in any post-conviction attack. ECF No. 37, Plea Agreement, ¶ 4(c). Though the wording differs from the waivers in *Crisp* and *Schneider*, the Court finds that the substance is the same and that Petitioner's claim for his lost opportunity to file a notice of appeal falls outside the scope of the waiver. Accordingly, Petitioner's claim that his attorney failed to file a notice of appeal may proceed.

If Petitioner explicitly told his lawyer to file a notice of appeal and he did not, it was deficient performance and Petitioner was prejudiced. *Sandoval-Lopez*, 409 F.3d at 1197. This is true even where, as here, the plea agreement includes a waiver of appellate rights. *Id*.

### a. <u>Whether Petitioner Requested Counsel To File A Notice Of Appeal</u>

For the reasons discussed below, the Court finds that Petitioner did not request his lawyer to file a notice of appeal in this matter and makes this factual finding based on the record before it. If a determination is required on a factual issue in a habeas proceeding, "district courts may make factual findings based on oral testimony, evidence in the record, or a combination of the two." *United States v. Del Toro*, No. 12-CR-00670-LHK, 2017 WL 1540788, at *7 (N.D. Cal. Apr. 28, 2017) (citing *Crittenden v. Chappell*, 804 F.3d 998, 1006–07 (9th Cir. 2015) (permitting clear error review of district court's factual findings in a habeas proceeding based "solely on a cold record, rather than testimony before the district judge" (citing Fed. R. Civ. P. 52(a)(6)))).

11

As an initial matter, the Court considers the government's untimely notice of continued opposition to Petitioner's § 2255 motion. Even though the filing made no effort to explain why filing was not timely, the interests of justice do not require that the government's notice be stricken. The government is admonished, however, that it is expected that it will timely file its papers and that future failure to do so may result in striking the untimely filings.[6]

As discussed above, Petitioner signed a plea agreement waiving the right to appeal the conviction or any sentence less than the maximum provided under 21 U.S.C. § 841(a)(1) and (b)(1)(C). ECF No. 37, Plea Agreement, ¶ 2(f). During the change-of-plea colloquy, Petitioner again acknowledged that he was giving up appellate rights in this matter. ECF No. 87 (11/23/15 Tr.) at 6:15-24 ("Q. As part of your plea agreement, you are going to waive; that is, give up, your right to appeal your case, and you are going to give up your right to challenge your case in any post conviction proceedings, including by way of motion or writ, except for nonwaivable claims. Do you understand that? A. Yes, sir. Q. And do you now waive[,] that is, give up, those legal rights, for this case? A. Yes, sir.").

Petitioner claims in his § 2255 motion that he asked his attorney to file a notice of appeal, despite the waiver of the right to appeal in the plea agreement, his verbal statements during the plea colloquy affirming the waiver of the right to appeal, and the significant benefit of getting a low-Guidelines sentence of 210 months when faced with the risk of an above-Guidelines sentence if he were to proceed to trial. Echoing a statement in his notice of appeal filed four months after he was sentenced, the sole support for Petitioner's claim that he asked his attorney to file a notice of appeal is the brief paragraph in

---

[6] A court may strike an untimely document using its inherent powers to manage and control its docket and as a sanction for violating a court order. "District courts have inherent power to control their dockets and may impose sanctions, including dismissal, in the exercise of that discretion." *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998) (emphasis removed) (holding that court may dismiss an action that abuses the judicial process using inherent powers to control dockets); *Udom v. Fonseca*, 846 F.2d 1236, 1239 (9th Cir. 1988) (finding that a district court abused its discretion in dismissing an amended complaint filed a few days after the court-ordered deadline, stating that "[t]he court might have reprimanded counsel, imposed a small fine, awarded defendants attorney's fees they may have incurred as a result of the delay, or warned plaintiff that further transgressions would be dealt with harshly, including possible dismissal" instead of ordering dismissal in the first instance).

his moving petition asserting that he stated "during the sentencing hearing [that] he wished to proceed with an appeal to the Ninth Circuit" and that counsel "promised" he would do so. ECF No. 64 at 3. Since then, Petitioner has done nothing to support this claim, filing neither a reply in support of his petition nor submitting an affidavit further explaining his purported request to file a notice of appeal.

By contrast, Petitioner's trial counsel submitted a sworn declaration stating that "Mr. Valenzuela did NOT ask me to file a Notice of Appeal." Beshwate Decl. ¶ 4. Mr. Beshwate's declaration further states that as part of the plea agreement, Petitioner "was advised that he was waiving his appellate rights" and "acknowledged and agreed to the waiver of his appellate rights as part of the agreement, through verbal means, through his signature on the plea agreement, and at the change of plea hearing." *Id*. ¶¶ 2-3. Mr. Beshwate also states that while Petitioner did not request that he file a notice of appeal, one of Petitioner's relatives called Mr. Beshwate's office "several months after the sentencing hearing" and that Mr. Beshwate "advised that the appellate rights were waived, and the time to file had now passed." *Id*. ¶ 4.

The Court finds that Petitioner's trial counsel's statements are credible and that Petitioner's statement in his Petition is not credible. Petitioner waived his right to appeal in the plea agreement; orally affirmed that he was waiving the right to appeal during the plea colloquy; and received a benefit by way of a low-end Guidelines sentence. "Petitioner's consistent waiver of his right to appeal belies his claim that he asked his trial counsel to appeal. In contrast, Petitioner's trial counsel's statement that Petitioner made no request for an appeal is consistent with Petitioner's statements, actions, and the benefits he received by giving up his right to appeal." *Del Toro*, 2017 WL 1540788, at *10.

Accordingly, the Court finds that Petitioner did not request that his counsel file a notice of appeal, and Petitioner's claim for ineffective assistance of counsel for failure to file a notice of appeal therefore fails.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken from the denial of a § 2255 motion unless a certificate of

appealability is issued. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To obtain a certificate of appealability, Petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (internal quotation marks and citations omitted).

Because Petitioner has failed to make a showing that he was denied a constitutional right, the Court **DECLINES** to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## VI. CONCLUSION AND ORDER

Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is **DENIED**. The Court declines to issue a certificate of appealability for this motion.

IT IS SO ORDERED.

Dated: **February 12, 2019**          /s/ Lawrence J. O'Neill
                                      UNITED STATES CHIEF DISTRICT JUDGE